# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| WILLIAM J. TRAXEL, ) | |
|    Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:10cv00074 |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION** |
|   Commissioner of Social Security, ) | |
|    Defendant ) | BY: PAMELA MEADE SARGENT |
| ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, William J. Traxel, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'"*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Traxel protectively filed his applications for DIB and SSI on November 1, 2007, alleging disability as of October 19, 2007, due to back problems and Marfan's Syndrome. (Record, ("R."), at 100-06, 115, 136.) Traxel also claimed that his chronic pain affected his memory and concentration. (R. at 132.) Traxel's claims were denied initially and on reconsideration. (R. at 57-60, 64-65, 67-68, 70-71.) Traxel then requested a hearing before an administrative law judge, ("ALJ"). (R. at 73-74.) A hearing was held on August 7, 2009, at which Traxel was represented by counsel. (R. at 25-52.)

By decision dated September 23, 2009, the ALJ denied Traxel's claims. (R. at 9-24.) The ALJ found that Traxel met the nondisability insured status requirements of the Act for DIB purposes through the date of her decision. (R. at 23.) The ALJ also found that Traxel had not engaged in substantial gainful activity since October 19, 2007, the alleged onset date. (R. at 23.) The ALJ determined that the medical evidence established that Traxel had severe physical and mental impairments, but she found that Traxel's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ also found that Traxel had the residual functional capacity to lift and carry items weighing up to 20 pounds occasionally and up to 10

pounds frequently, to stand up to two hours, to walk up to two hours and to sit up to six hours with normal breaks in an eight-hour work day, to occasionally climb ramps and stairs, but not ladders, ropes or scaffolding, to occasionally balance, kneel, stoop and crouch, but never crawl, to push and pull with the lower extremities up to the lift and carry weight amounts, to avoid exposure to extremes of temperature, hazardous machinery, unprotected heights and vibrating surfaces and to perform simple, routine, repetitive, unskilled work that did not require interaction with the public or more than superficial interaction with co-workers and supervisors. (R. 23-24.) The ALJ found that Traxel was unable to perform his past relevant work. (R. at 24.) Based on Traxel's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that he could perform, including jobs as an assembler and a parts inspector. (R. at 22, 24.) Thus, the ALJ found that Traxel was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2011).

After the ALJ issued his decision, Traxel pursued his administrative appeals, (R. at 97), but the Appeals Council denied his request for review. (R. at 1-5.) Traxel then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Traxel's motion for summary judgment filed April 18, 2011, and the Commissioner's motion for summary judgment filed June 29, 2011.

-3-

*II. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Traxel argues that the ALJ erred by rejecting the psychological opinions of record without explaining her reasoning. (Plaintiff's Brief In Support Of Motion

For Summary Judgment, ("Plaintiff's Brief"), at 7-12.) Traxel does not contend that the ALJ erred in his physical residual functional capacity finding.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

A review of the ALJ's opinion shows that Traxel's argument is in error for two reasons. One, the ALJ addressed the opinions of Marvin Gardner Jr., Ph.D., the consultative examining psychologist, and of the state agency psychologists,

-5-

Joseph I. Leizer, Ph.D., and E. Hugh Tenison, Ph.D, in her decision. (R. at 14-15.) Two, the only expert psychological opinion the ALJ rejected was Tenison's opinion that Traxel did not suffer from a severe mental impairment. (R. at 205, 218.) The ALJ's finding with regard to Traxel's mental residual functional capacity is consistent with Gardner's opinions and, in large part, with Leizer's opinion. (R. at 224-30, 239-56.)

Gardner completed a consultative psychological evaluation of Traxel on May 27, 2008. (R. at 224-30.) As a result of his evaluation, Garnder diagnosed Traxel with an adjustment disorder with mixed anxiety and depressed mood. (R. at 229.) He placed Traxel's then-current Global Assessment of Functioning score, ("GAF"),[1] at 55[2] and his highest GAF score over the past year at 60. (R. at 230.) Gardner stated that Traxel could perform detailed and complex tasks, maintain regular attendance in the workplace, perform work activities without special or additional supervision, complete a workday or workweek without interruptions resulting from his psychiatric condition and accept instructions from supervisors. (R. at 229.) According to Gardner, Traxel was unlikely to decompensate due to the usual stressors of competitive work. (R. at 229.) Gardner stated that Traxel did have a moderate impairment of his concentration and that he should not interact with co-workers or the public. (R. at 229.)

---

[1] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[2] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

While Leizer's assessment placed a few greater restrictions on Traxel's mental residual functional capacity, (R. at 239-40), it is apparent Leizer agreed in large part with Gardner's assessment. In particular, Leizer stated, "although the claimant would appear to be moderately limited in concentration, persistence, attendance and interacting comfortably around others, he would nonetheless appear to retain the capacity to perform the mental demands of simple, unskilled and nonstressful work. (R. at 241.)

Based on the above, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence in determining Traxel's mental residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's mental residual functional capacity finding; and

2. Substantial evidence exists to support the Commissioner's finding that Traxel was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Traxel's motion for summary judgment, grant the Commissioner's motion for summary judgment and

-7-

affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: January 6, 2012.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE